## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY<br>378 N. Main Ave.<br>Tucson, AZ 85701<br><br>    *Plaintiff*,<br><br> v.<br><br>U.S. DEPARTMENT OF COMMERCE<br>1401 Constitution Ave., NW<br>Washington, D.C. 20230<br><br>    *Defendant*. | Case No: 1:25-cv-2236 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

1. In this action, the Center for Biological Diversity ("Center") challenges the failure of Defendant, the U.S. Department of Commerce ("DOC"), to provide records concerning the agency's decision to propose rescinding the regulatory definition of "harm" in the Endangered Species Act's ("ESA"), implementing regulations, 50 C.F.R. § 222.102, in violation of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *as amended*.

2. Congress enacted the ESA in 1973 to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved." 16 U.S.C. § 1531(b). This is achieved, in part, by Section 9 of the ESA, which prohibits actions that purposefully or incidentally "take" endangered species. *Id.* § 1538(a)(1). The ESA defines "take"

as "to harass, *harm*, pursue, hunt, shoot, wound, kill, trap, capture, or collect, or to attempt to engage in any such conduct." *Id.* § 1532(19) (emphasis added). Congress intended this prohibition to be interpreted broadly "to include every conceivable way in which a person can 'take' or attempt to 'take' any fish or wildlife." S. Rep. No. 93-307, at 7 (1973), *as reprinted in* 1973 U.S.C.C.A.N. 2989, 2995. Though the ESA does not separately define the word "harm," regulations promulgated by the U.S. Fish and Wildlife Service ("FWS") in 1975, which were later clarified in 1981, defined "harm" as "an act which actually kills or injures wildlife."50 C.F.R. § 17.3 (1981); *see also* Reclassification of American Alligator and Other Amendments, 40 Fed. Reg. 44,412 (Sept. 26, 1975); Final Redefinition of "Harm," 46 Fed. Reg. 54,748 (Nov. 4, 1981). "Such act may include significant habitat modification or degradation where it actually kills or injures wildlife by significantly impairing essential behavioral patterns, including breeding, feeding or sheltering." 50 C.F.R. § 222.102.

3.      In 1995, the Supreme Court upheld the regulatory definition of "harm," finding that it (1) "naturally encompasses habitat modification that results in actual injury or death to members of an endangered or threatened species," (2) aligns with the ESA's conservation purpose, and (3) is supported by Congress' later ESA amendment to permit incidental take including habitat modification. *Babbitt v. Sweet Home Chapter of Cmtys. for a Greater Or.* ("*Sweet Home*"), 515 U.S. 687, 697–701 (1995).

4.      Since 1999, the DOC's National Marine Fisheries Service ("NMFS") has defined "harm" very similarly to FWS's definition, as "an act which actually kills or injures fish or wildlife. Such an act may include significant habitat modification or degradation which actually kills or injures fish or wildlife by significantly impairing essential behavioral patterns, including, breeding, spawning, rearing, migrating, feeding or sheltering." 50 C.F.R. § 222.102.

5.      For decades then, the regulatory definition of "harm" has thus aligned with the plain language and conservation purpose of the ESA. Yet, on April 17, 2025, FWS and NMFS (collectively "the Services") issued a Notice of Proposed Rulemaking in the Federal Register to rescind the regulatory definition of "harm." Rescinding the Definition of "Harm" Under the Endangered Species Act, 90 Fed. Reg. 16,102 (Apr. 17, 2025). Drawing primarily from Justice Scalia's dissent in *Sweet Home*, the Services' proposal alleged that the existing definition of the word "harm" does not match "the single, best meaning of the statute." *Id.* at 16,103.

6.      If finalized, the Services' recission of the regulatory definition of "harm" could upend the sensible approach they have utilized for decades to require reasonably prudent measures or alternatives to avoid habitat destruction that may otherwise lead to extinction. The Center is unaware of any scientific or regulatory need for the recission. Given that the ESA was enacted with overwhelming bipartisan support, remains one of our nation's strongest environmental laws, and continues to receive strong public support, the Center is deeply interested in, and affected by, how the recission of the regulatory definition of "harm" could damage, undermine, or negate the Center's longstanding efforts to protect endangered species and their native habitat.

7.      On May 7, 2025, the Center submitted a request for records pursuant to FOIA, specifically to DOC's Office of the Secretary ("OS"), seeking records "mentioning, including, discussing, and/or documenting the development of the proposal to rescind the regulatory definition of 'harm' in the [ESA] regulations."

8.      On May 8, 2025, DOC transferred the Center's FOIA request to the National Oceanic and Atmospheric Administration ("NOAA"), even though NOAA was neither the agency to which the Center submitted the FOIA request nor the proper action agency. The Center

appealed OS's improper rerouting on May 14, 2025, to DOC's FOIA Public Liaison within DOC's Assistant General Counsel for Employment, Litigation, and Information ("AGC-ELI").

9.      The Center's appeal included an April 2025 NOAA employee email, which was provided in response to a prior Center FOIA request, stating that NOAA's Office of Protected Resources was not involved in processing the proposed rule change to rescind the definition of harm. The Center's appeal to AGC-ELI asserted that because NOAA is not the proper agency to respond to the Center's FOIA request and OS provided no explanation for its actions, the Center was left to speculate as to why OS would transfer the Center's FOIA request to a sub-cabinet level agency when existing records demonstrate that OS itself is the likely custodian of the records sought.

10.      As of the date of the filing, the Center has received no response from AGC-ELI regarding the status of the Center's appeal, nor has the Center received any determination or responsive records from OS.

11.      DOC OS's unlawful refusal to comply with FOIA's statutorily mandated deadline for a determination on the Center's FOIA request, failure to conduct an adequate search for responsive records, failure to promptly release responsive records, and improper withholding of responsive records undermine FOIA's policy of government transparency.

12.      Prompt public access to these records is necessary to effectuate FOIA's statutory purpose. Accordingly, the Center seeks (1) declaratory relief establishing that DOC has violated FOIA and (2) injunctive relief directing Defendant to provide the Center with all responsive records without further delay.

## JURISDICTION AND VENUE

13.    The Court has jurisdiction over this matter pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331 because this action arises under FOIA and the Declaratory Judgement Act, 28 U.S.C. §§ 2201–2202.

14.    Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

15.    Declaratory relief is appropriate under 28 U.S.C. § 2201(a).

16.    Injunctive relief is appropriate under 5 U.S.C. § 522(a)(4)(B) and 28 U.S.C. § 2202.

## PARTIES

17.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a national, non-profit conservation organization with offices throughout the United States and is headquartered in Tucson, Arizona. The Center has more than 93,000 members. The Center works through science, law, and policy to maintain and increase protections for air and water; plants, animals, and their native habitats; a livable climate; public lands; and healthy communities. The Center's Endangered Species Program, which submitted the FOIA request at issue, specifically focuses on protecting and recovering all endangered and threatened species and their habitats.

18.    FOIA requires Defendant to search for and promptly produce the requested records to the Center. Defendant's failure to do so harms the Center because it deprives the Center from timely obtaining information about Defendant's development of the proposal to rescind the regulatory definition of "harm," a regulation which has protected and conserved endangered and threatened species for five decades.

19.     Defendant's failure to comply with FOIA harms the Center's ability to provide full, accurate, and current information to its members and the public on a matter of public interest. Absent this information, the Center's mission to protect endangered and threatened species and their habitats is adversely affected. The Center has also been required to expend resources to prosecute this action. The relief the Center seeks will remedy the harm Defendant caused and continues to cause to the Center.

20.     Defendant U.S. DEPARTMENT OF COMMERCE, within which OS and AGC-ELI reside, is a cabinet-level agency within the executive branch of the U.S. government tasked with implementing the ESA for marine species. OS is tasked with policy development and administrative operations. AGC-ELI is tasked with responding to FOIA appeals concerning OS and NOAA. *See* 15 C.F.R. § 4.10(b). DOC is a federal agency that possesses and controls the records the Center seeks, and thus is subject to FOIA. *See* 5 U.S.C. § 552(f). As such, DOC's OS is responsible for fulfilling the Center's FOIA requests.

## STATUTORY BACKGROUND

21.     FOIA's primary purpose is to improve government transparency and accountability by requiring the disclosure of agency records and information. It establishes the public's right to access all federal agency records, 5 U.S.C. § 552(a), unless one or more narrow statutory exemptions apply. *Id*. § 552(b).

22.     Recognizing that the timely disclosure of requested records is essential to fulfilling its purpose, Congress imposes strict deadlines for agencies to respond to FOIA requests.

23.     Within twenty working days of receiving a request, an agency must (1) determine if it will release requested records and (2) notify the requester of (a) its determination and the

reasons therefore, (b) the right to seek assistance from the FOIA Public Liaison, and (c) the right to appeal an adverse agency determination. *Id*. § 552(a)(6)(A).

24.    To make a lawful "determination," "the agency must at least (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013).

25.    FOIA requires each agency to make reasonable efforts to search for records in a manner that is reasonably calculated to locate records that are responsive to the FOIA request. *See* 5 U.S.C. § 552(a)(3)(C)–(D).

26.    When DOC or a component receives a request for records in its possession that originated within another Department or component, that request may be referred to the originating agency for direct response to the requester. 15 C.F.R. § 4.5(b). In the event of a referral, the FOIA officer should (1) notify the requester of the referral in writing and (2) "inform the requester of the name(s) of the agency or Department to which the record was referred, including the agency's or component's FOIA contact information." *Id.* § 4.5(c).

27.    FOIA requires federal agencies to promptly disclose requested records. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i).

28.    In certain limited instances, records may be withheld pursuant to nine specific exemptions. *Id*. § 552(b). These exemptions must be narrowly construed in light of FOIA's dominant objective of disclosure, not secrecy. An agency bears the burden of proof if it claims any exemption applies to withhold responsive documents. *Id*. § 552(a)(4)(B).

29.     Even where records may be exempt from disclosure, FOIA requires agencies to disclose reasonably segregable portions of those records. *Id*. § 552(b); *see id.* § 552(d).

30.     FOIA provides this Court jurisdiction "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." *Id.* § 552(a)(4)(B).

## FACTUAL BACKGROUND

31.     On May 7, 2025, the Center submitted to OS a FOIA request for records from January 20, 2025, to the date OS conducts the relevant search, seeking "the records mentioning, including, discussing, and/or documenting the development of the proposal to rescind the regulatory definition of 'harm' in the [ESA] regulations."

32.     That same day, May 7, 2025, OS sent the Center an automated email indicating that it had received the Center's request and assigned it with tracking number DOC-OS-2025-001547.

33.     On May 8, 2025, OS sent an automated email to the Center stating that the tracking number was changed from DOC-OS-2025-001547 to DOC-NOAA-2025-001552, indicating that OS had improperly forwarded the Center's request to the National Oceanic and Atmospheric Administration ("NOAA"). OS's automated email contained no explanation for why the Center's request was transferred to NOAA.

34.     That same day, May 8, 2025, NOAA informed the Center that it had received the Center's FOIA request and was taking a ten working day extension because of "the need to search for, collect, and appropriately examine" a large volume of records. NOAA stated that it anticipated responding to the Center's request by June 20, 2025, thirty working days after NOAA's receipt of the Center's FOIA request from DOC.

35.     On May 14, 2025, the Center contacted DOC AGC-ELI to dispute and appeal the DOC's improper routing of the Center's FOIA request to NOAA. The Center's appeal included an email chain from April 2025, which was provided in response to a prior Center FOIA request, where NOAA employees stated that NOAA's Office of Protected Resources was not processing the proposed rule change to rescind the ESA's definition of harm.

36.     The Center's May 14, 2025, appeal asserted that because it properly submitted its request to OS and NOAA is not the proper action agency, OS must immediately reopen FOIA request DOC-OS-2025-001547 without restarting the statutory clock. The Center notified DOC that it would file suit if it did not comply within twenty working days.

37.     On June 18, 2025, the Center, via email, requested an update on the status of its FOIA appeal to DOC's Public Liaison within AGC-ELI. *See* 15 C.F.R. § 4.10(a)-(b).

38.     On July 1, 2025, AGC-ELI, via email, responded stating that they had received the Center's request and were "working on a response."

39.     On July 3, 2025, AGC-ELI, via email, responded stating that "[i]n responding to [the Center's] request, NOAA will be tasking out the Office of the Secretary."

40.     On July 3, 2025, the Center, via email, requested clarification by the AGC-ELI as to what "tasking out" meant. After receiving no response from AGC-ELI, the Center sent an additional follow-up email on July 9, 2025.

41.     On July 10, 2025, AGC-ELI, via email, clarified that they were "proposing that the request will stay with NOAA as the primary office, but that NOAA will task the relevant office(s) within [DOC OS] to search and include those documents in NOAA's response."

42.     As of the date of this filing, more than forty-one (41) working days have passed since the Center sent AGC-ELI the Center's May 14, 2025, appeal letter. This is past the twenty-working-day deadline FOIA requires. 5 U.S.C. §552(a)(6)(A)(ii).

43.     As of the date of this filing, forty-six (46) working days have passed since OS received the Center's May 7, 2025, request. This is past the twenty-working-day deadline FOIA requires and the additional ten working day extension NOAA requested. *Id.* §552(a)(6)(A)(i), (a)(6)(B)(i).

44.     As of the date of this filing, the Center has received no further communications from OS nor any other DOC component.

45.     As of the date of this filing, neither OS nor any other DOC component has provided a lawful determination to the Center describing the scope of the records it intends to produce or withhold, explained the reasons for withholding any records, or informed the Center that it may appeal any specific adverse determination within the relevant time periods outlined in 5 U.S.C. § 552(a)(6)(A)–(B).

46.     As of the date of this filing, neither OS nor any other DOC component has disclosed any records to the Center pursuant to its May 7, 2025, request, tracking number DOC-OS-2025-001547.

47.     As of the date of this filing, neither OS nor any other DOC component has requested additional information from the Center, notified the Center of any lawful circumstances that prevent DOC from complying with FOIA's deadline for a determination and prompt release of responsive records, or provided any date by which it expects to make a determination on the Center's FOIA request. *Id.* § 552(a)(6)(A)–(B).

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### DOC Failed to Comply With FOIA's Mandatory Determination Deadline

48.     Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

49.     The Center properly requested records within the control of DOC through the Center's May 7, 2025, request, tracking number DOC-OS-2025-001547.

50.     The Center has a statutory right to a lawful final determination from DOC on the Center's May 7, 2025, FOIA request. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

51.     To make a lawful "determination," DOC must at least (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) "inform the requester that it can appeal whatever portion of the 'determination'" is adverse." *Citizens for Resp.*, 711 F.3d at 188.

52.     The deadline for DOC to provide a determination on the Center's FOIA request was June 5, 2025.

53.     DOC's failure to provide a lawful determination by FOIA's mandatory deadline violates the Center's right to a determination. 5 U.S.C. § 552(a)(6)(A)(i), (a)(6)(B)(i).

54.     DOC has no lawful basis for its delay and has provided no lawful basis to withhold a determination on the Center's FOIA request.

55.     The Center has exhausted its administrative remedies under FOIA. 5 U.S.C. § 552(a)(6)(C)(i).

56.    The Center's organizational activities will be adversely affected if DOC is allowed to continue violating FOIA's requirements to provide a determination.

57.    Based on the nature of the Center's organizational activities, it will undoubtedly continue to employ FOIA's provisions in records requests to DOC in the foreseeable future.

58.    Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, DOC will continue to violate the Center's right to receive a determination on the Center's request for records under FOIA.

## SECOND CLAIM FOR RELIEF

### DOC Failed to Conduct an Adequate Search for Responsive Records

59.    Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

60.    The Center has a statutory right to have DOC process the Center's May 7, 2025, FOIA request in a manner that complies with FOIA. 5 U.S.C. § 552(a)(3).

61.    DOC violated the Center's rights in this regard because it has unlawfully failed to conduct an adequate search reasonably calculated to locate all records responsive to the Center's FOIA request. *Id.* § 552(a)(3)(C)–(D).

62.    DOC has no lawful basis for its failure to conduct an adequate search for records responsive to the Center's May 7, 2025, FOIA request.

63.    The Center has exhausted its administrative remedies under FOIA. 5 U.S.C. § 552(a)(6)(C)(i).

64.    Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, DOC will continue to violate the Center's rights by failing to conduct an adequate search for records responsive to the Center's May 7, 2025, request.

## THIRD CLAIM FOR RELIEF

### DOC Failed to Promptly Disclose All Responsive Records

65.     Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

66.     The Center has a statutory right to the prompt disclosure of requested records. 5 U.S.C. § 552(a)(3)(A), (a)(6)(C)(i).

67.     DOC has violated the Center's rights in this regard by withholding records that are responsive to the Center's May 7, 2025, FOIA request.

68.     DOC has provided no lawful basis to withhold the records pursuant to any of FOIA's nine exemptions to mandatory disclosure or to withhold any segregable, nonexempt portion of the records. *Id.* § 552(a)(8)(A), (b).

69.     DOC has no lawful basis for its delay or to withhold records in response to the Center's March 28, 2025, FOIA request.

70.     The Center has exhausted its administrative remedies under FOIA. 5 U.S.C. § 552(a)(6)(C)(i).

71.     Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, DOC will continue to violate the Center's right to promptly receive all records responsive to its FOIA requests.

## FOURTH CLAIM FOR RELIEF

### DOC Unlawfully Withheld Responsive Agency Records

72.     Plaintiff re-alleges and incorporates by reference all allegations made in all preceding paragraphs.

73.    DOC improperly and unlawfully withheld records responsive to the Center's May 7, 2025, FOIA request, tracking number DOC-OS-2025-001547.

74.    DOC has not communicated with the Center about the scope of records they intend to produce and/or withhold, has given no reasons to withhold any records, and has not disclosed any records in response to the Center's May 7, 2025, FOIA request.

75.    OS improperly referred the Center's May 7, 2025, FOIA request, tracking number DOC-OS-2025-001547, to NOAA, where its tracking number was reassigned to DOC-NOAA-2025-001552.

76.    NOAA has not provided any responsive records to the Center through DOC-NOAA-2025-001552.

77.    DOC has violated the Center's statutory rights by illegally withholding records that are responsive to the Center's May 7, 2025, FOIA request, but failing to demonstrate that any such records are subject to any FOIA withholding provision or exemption. 5 U.S.C. § 552(b).

78.    OS has violated FOIA by not offering a reasonable explanation for why it rerouted the Center's May 7, 2025, FOIA request to NOAA. *Id.* § 552(a)(6)(A).

79.    The Center has exhausted its administrative remedies under FOIA. 5 U.S.C. § 552(a)(6)(C)(i).

80.    Unless enjoined and made subject to a declaration of the Center's legal rights by this Court, DOC will continue to violate the Center's right to responsive records that are improperly withheld under FOIA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(A)     Declare that Defendant violated FOIA by failing to conduct an adequate search for records responsive to the Center's May 7, 2025, FOIA request, failing to provide a lawful determination on that request, and failing to promptly disclose all responsive records;

(B)     Order Defendant to provide a determination on Plaintiff's May 7, 2025, FOIA request, tracking number DOC-OS-2025-001547;

(C)     Order Defendant to conduct a search reasonably calculated to locate all records responsive to Plaintiff's FOIA request;

(D)     Order Defendant to produce, by a date certain, all nonexempt responsive records, any segregable portions of otherwise exempt records, and a *Vaughn* index of any records or portions of records withheld under any FOIA exemption;

(E)     Enjoin Defendant from continuing to withhold any nonexempt responsive records or segregable portions of responsive records;

(F)     Retain jurisdiction of this action to ensure that Defendant timely processes Plaintiff's FOIA request and that no agency records or portions of records are improperly withheld;

(G)     Award Plaintiff its costs and reasonable attorney fees pursuant to 5 U.S.C. § 552(a)(4)(E) or 28 U.S.C. § 2412; and

(H)     Grant such other and further relief as the Court may deem just and proper.


DATED: July 15, 2025                              Respectfully submitted,

                                                  *s/ Kristen Monsell*
                                                  Kristen Monsell (D.C. Bar No. CA00060)
                                                  Center for Biological Diversity
                                                  2100 Franklin St., Suite 375
                                                  Oakland, CA 94612

Phone: (510) 844-7135
Fax: (510) 844-7150
kmonsell@biologicaldiversity.org

*s/ David Derrick*
David Derrick (CA Bar No. 316749)*
Center for Biological Diversity
2100 Franklin St., Suite 375
Oakland, CA 94612
Phone: (510) 844-7135
Fax: (510) 844-7150
dderrick@biologicaldiversity.org
*Pro Hac Vice* Application Pending

*Attorneys for Plaintiff*